**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| EDGAR T. NUMRICH, | ) |
| Plaintiff, | ) No. 03:12-cv-01594-HU |
| vs. | ) **ORDER ON** |
|  | ) **12(B)(6) MOTION TO DISMISS** |
| UWEMEDIMOH ("WAYNE") NTEKPERE, | ) |
| Defendant. | ) |

_____

Edgar T. Numrich
200 Greenridge Drive #1108
Lake Oswego, OR 97035-1496

    Plaintiff *pro se*

Joseph J. Haddad
JJH Law, P.C.
351 NW 12th Avenue
Portland, OR 97209

    Attorney for Defendant

1 - ORDER

HUBEL, Magistrate Judge:

This matter is before the court on the defendant's motion to dismiss the plaintiff's Amended Complaint, Dkt. #22, for failure to state a claim upon which relief can be granted. Dkt. #24; *see* Dkt. #25, Memorandum in Support. The *pro se* plaintiff Edgar T. Numrich has filed a response, Dkt. #29, and the defendant Uwemedimoh ("Wayne") Ntekpere has replied, Dkt. #31. Numrich later filed a "Request (Motion) for Judicial Notice," attaching excerpts from several court opinions. Dkt. #33. On the eve of oral argument, he filed a "Second Request (Motion) for Judicial Notice," attaching another reported opinion. Dkt. #35. The court deems the documents to be supplemental briefing, and has considered the cited decisions in connection with Numrich's arguments in this matter. The motion is fully briefed, and the court heard oral argument on the motion on January 29, 2013. Both parties have consented to the entry of final judgment by the undersigned. Dkt. #42.[1]

/ / /

/ / /

/ / /

---

[1] The undersigned initially filed Findings and Recommendations on Ntekpere's motion. Later the same day, the parties' full consent was docketed. Accordingly, I have withdrawn the Findings and Recommendation, and its referral to Judge Hernandez, and now rule on the motion.
  I note that Numrich filed a notice of his intent to assert objections to the Findings and Recommendation. Any such objections now would be moot; however, Numrich is free to file an appeal of this final order to the Ninth Circuit Court of Appeals, by filing a notice of appeal with the Clerk of this Court within 30 days, and otherwise complying with the Federal Rules of Appellate Procedure. *See, in particular*, Fed. R. App. P. 3 & 4.
  In addition, I am informed that Numrich has requested a transcript of oral argument at court expense. That request is **denied.**

2 - ORDER

***STANDARDS FOR MOTIONS TO DISMISS***

Chief Judge Aiken of this court set forth the standard for the court's consideration of a motion to dismiss in *Gambee v. Cornelius*, No. 10-CV-6265-AA, 2011 WL 1311782 (D. Or. Apr. 1, 2011) (Aiken, C.J.). Judge Aiken observed:

> Under Fed. R. Civ. P. 12(b)(6), a complaint is construed in favor of the plaintiff, and its factual allegations are taken as true. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563[, 127 S. Ct. 1955, 1969, 167 L. Ed. 2d 929] (2007). "[G]enerally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint." *Daniels-Hall*, 629 F.3d at 998.

*Id.* at *2.

Even where the court is doubtful that a plaintiff can prevail on the merits, "'so long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be rejected on evidentiary grounds.'" *Balderas v. Countrywide Bank, N.A.*, 664 F.3d 787, 791 (9th Cir. 2011) (quoting *In re Gilead Sciences Secs. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008)).

3 - ORDER

***BACKGROUND FACTS***

In his Amended Complaint, Dkt. #22, Numrich alleges the following facts as background for his claims against Ntekpere. On or about December 19, 2010, Ntekpere placed a classified ad in the *Sunday Oregonian* newspaper, seeking a Licensed Tax Preparer ("LTP") for his business. According to Numrich, Ntekpere owned a franchise of Jackson Hewitt Tax Service, and operated under the business name "New Edge" in Aloha, Oregon. Numrich was an LTP, having been licensed by the Oregon Board of Tax Practitioners; however, Numrich was not registered with the U.S. Internal Revenue Service as a tax preparer, and he therefore did not have an IRS Preparer Tax Identification Number. From 2004 through 2009, Numrich did seasonal work as an LTP for CPA firms, averaging at least fifty hours of work per week between February 1 and April 15 of each year.

Numrich responded to Ntekpere's ad, and then interviewed with Ntekpere on or about December 21, 2010. At the interview, Ntekpere allegedly made certain representations to Numrich regarding available employment. Numrich completed a blank IRS Form W-4, but Ntekpere did not offer Numrich full-time employment. Instead, he allegedly told Numrich there was a part-time position open at the Aloha office of New Edge, with a four-day, thirty-one-hour work schedule. On February 1, 2011, Numrich completed a course of "self-taught training" in the use of Ntekpere's tax preparation software. The training took place at Ntekpere's Aloha office, and took approximately eight hours. Although Numrich states he "refused in writing to accept any compensation for this training time," he nevertheless was paid for his time "through the payroll

4 - ORDER

services of Jackson Hewitt Tax Services, Inc., Parsippany, New Jersey." Dkt. #22, ¶ 17.

Also on February 1, 2011, Numrich received "a proposed hand-written work 'schedule' [from] Ntekpere's office receptionist." *Id.*, ¶ 19. The proposed work was in an office in Hillsboro, Oregon, and "consisted of just six (6) hours from 3 to 9 p.m. on February 2 and February 5, 2011[.]" *Id.* According to Numrich, the work was to be performed by him alone, with no supervision by a Licensed Tax Consultant. Numrich asserts he "has never been licensed by any authority to prepare and file income tax returns without someone in attendance having proper supervisory and review credentials." *Id.*, ¶ 20.

Numrich alleges he learned from the Oregon Board of Tax Practitioners that neither Ntekpere nor New Edge was registered as a tax preparation office with the State of Oregon. This caused Numrich to be concerned that if he performed the proposed work, he would be violating state or federal law, and he therefore declined the offered employment by sending an e-mail to Ntekpere. *Id.*, ¶ 22. According to Numrich, he never entered into any employment agreement with Ntekpere or New Edge.

At the time Ntekpere offered Numrich the part-time work, Numrich was receiving $129 per week in unemployment benefits from the State of Oregon Employment Department. According to Numrich, his compensation for the proposed twelve hours of work would not have been enough to "offset or disallow" his receipt of those unemployment benefits. *Id.*, ¶ 21. The Employment Department initiated an investigation into Numrich's receipt of unemployment benefits sometime in 2011. A form was sent to Ntekpere asking him

5 - ORDER

about Numrich. At oral argument, Numrich explained that the form had several check-box choices. He claims the correct box for Ntekpere to have checked was one stating Numrich declined to accept an offer of employment. Instead, Numrich asserts Ntekpere checked the box indicating Numrich quit without good cause. A subsequent telephone hearing on Numrich's unemployment claim was conducted by an ALJ on July 14, 2011, during which testimony was taken from Numrich and Ntekpere. Among other things, Ntekpere testified that Numrich was "employed by new Edge Tax Service, Inc. on February 1st, 2011," and "he quit his job." *See* Dkt. #30-1, ECF p. 2. Numrich alleges the written transcript of the hearing includes numerous "unintelligible" entries during Ntekpere's testimony, as well as "numerous incorrect (phonetic) spellings of proper names that were never challenged or corrected by either the ALJ, the Office of Administrative Hearings, or the Employment Department." Dkt. #22, ¶ 27. Ultimately, Numrich was denied benefits, and he was required to pay back a portion of the unemployment benefits he had already received. Numrich appealed the final decision of the Employment Department. The Oregon Court of Appeals affirmed the denial, and the Oregon Supreme Court denied Numrich's petition for review. Numrich blames Ntekpere's "misrepresentations" to the Employment Department for his loss of benefits, although at oral argument, he indicated repeatedly that Ntekpere's "misrepresentations" may have been "unwitting."

/ / /
/ / /
/ / /
/ / /

6 - ORDER

### *NUMRICH'S CLAIMS AND NTEKPERE'S MOTION TO DISMISS*

Based on the above facts, Numrich asserts several claims. Ntekpere moves to dismiss each of Numrich's claims for failure to state a claim upon which relief may be granted.

**A.  Negligence**

Numrich's first claim is entitled "General Allegation - Negligence." In this claim, Numrich alleges Ntekpere had a special relationship with him that "imposed a duty of care beyond the general common-law duty to use reasonable care to avoid foreseeable harm to [Numrich]." *Id.*, ¶ 28. He claims Ntekpere's conduct injured him, and the damages were reasonably foreseeable.

Under Oregon law, to survive a motion to dismiss a negligence claim, the plaintiff must allege facts from which the factfinder could determine the following:

> (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.

*Solberg v. Johnson*, 306 Or. 484, 490-91, 760 P.2d 867, 870 (1988) (citations omitted); *accord Stewart v. Kids Inc. of Dallas, OR*, 245 Or. App. 267, 274-75, 261 P.3d 1272, 1277 (2011). Although a special relationship between the plaintiff and the defendant "may establish the *existence* of a duty of care on the part of defendant, . . . the *scope* of that particular duty in that particular relationship turns out to be limited to harms to plaintiff that

7 - ORDER

were reasonably foreseeable." *Stewart*, 245 Or. App. at 275, 261 P.3d at 1277 (emphasis in original; internal quotation marks, citations omitted).

Here, Numrich alleges a special relationship existed between himself and Ntekpere that gave rise to an enhanced duty of care. The court is aware of no constitutional, statutory, or case authority that would lead to a conclusion, based on these facts, that any special relationship existed between Numrich and Ntekpere. Further, the facts alleged by Numrich fail to establish that Ntekpere's conduct caused a foreseeable risk of the type of harm the tort of negligence is intended to remedy. The court can conceive of no amendment that would cure the deficiencies in Numrich's negligence claim. Accordingly, this claim is hereby **dismissed** without leave to amend.

### B.   *Negligent Misrepresentation*

Numrich's second claim is entitled "General Allegation - Negligent Misrepresentation." Here, he alleges Ntekpere's representations were part of "a pattern of negligent activity" on Ntekpere's part; Ntekpere failed to exercise reasonable care in communicating with Numrich; and the "false, erroneous, or no information" supplied by Ntekpere caused Numrich to suffer "both pecuniary and non-economic loss by justifiably relying on the representations." Dkt. #22, ¶ 29.

In Oregon, a negligence claim, including a claim for negligent misrepresentation, that seeks only economic damages "must be predicated on some duty of the negligent actor to the injured party beyond the common-law duty to exercise reasonable care to prevent

8 - ORDER

foreseeable harm." *Lewis-Williamson v. Grange Mut. Ins. Co.*, 179 Or. App. 491, 494, 39 P.3d 947, 949 (2002) (citing *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or. 149, 159, 843 P.2d 890, 896 (1992)); *accord Miller v. Mill Creek Homes, Inc.*, 195 Or. App. 310, 315, 97 P.3d 687, 689 (2004). The issue of whether a particular relationship is one that gives rise to such an enhanced duty is a question of law, to be decided on a case-by-case basis. *Lewis-Williamson*, 179 Or. App. at 495, 39 P.3d at 949 (citations omitted).

As I have observed previously, "As a matter of law, an employee-employer relationship is not one in which the employer has a 'duty' to pursue the interests of its employees. *Conway v. Pacific Univ.*, 324 Or. 231, 243, 924 P.2d 818, 826 (1996). Such a relationship is not a special relationship able to support a negligence claim for purely economic damages." *McFarlin v. Gormley*, 2008 WL 410104, at *15 (D. Or. Feb. 12, 2008) (Hubel, MJ). Similarly, if the relationship between an employer and an employee is not the type of special relationship that will support liability for negligence or negligent misrepresentation, then surely the more amorphous relationship between a *prospective* employee and a *prospective* employer would not be such a special relationship. *See Wagner v. Home Depot USA, Inc.*, 2010 WL 4670533, at *3 (D. Or. Nov. 9, 2010) (King, J.) (holding relationship between prospective employer and prospective employee did not create the special relationship required to support the tort of negligent misrepresentation). The facts here simply do not establish a relationship between these parties that gave rise to an enhanced duty of care. This claim also is **dismissed** without leave to amend.

9 - ORDER

***C. Negligent Interference with Economic Expectation***

Numrich's third claim is entitled "General Allegation - Negligent Interference with Economic Expectation." Here, he alleges Ntekpere's "misleading and wrongful representations to third-party Employment Department that [Numrich] 'quit work' as a 'tax preparer' resulted in the denial of future economic benefits to [Numrich]."

Although the tort known as "intentional interference with economic relations" is well-established in Oregon, *cf., e.g., Frakes v. Nay*, 254 Or. App. 236, ___ P.3d ___, 2012 WL 6628042, at *21 (Dec. 19, 2012) (quoting *Allen v. Hall*, 328 Or. 276, 280, 974 P.2d 199, 202 (1999), for the proposition that "the well-established tort known as intentional interference with economic relations" reasonably may extend to an action for "intentional interference with a prospective inheritance"), Oregon has never recognized the tort of "negligent interference with economic expectation."[2] Construing Numrich's *pro se* pleading liberally, Numrich alleges he had a professional or business relationship with the Oregon Employment Department[3] with which Ntekpere's "false testimony" interfered, causing Numrich's claim for unemployment

---

[2] Indeed, the only case in which any Oregon court appears to have used the term "interference with economic expectation" was a case before the Oregon Tax Court filed by Numrich in 2004, in which he attempted to pursue a claim that the Oregon Department of Revenue's actions constituted "Negligence, Defamation, and Intentional Interference with Economic Expectation." *See Numrich v. Dept. of Revenue*, 2004 WL 1380011 (Or. Tax June 17, 2004).

[3] Numrich confirmed at oral argument that this is the relationship he contends was the subject of Ntekpere's interference.

10 - ORDER

benefits to be denied, and "including reversal of those previously paid." Dkt. #29, ECF p. 13.

To prevail on a claim for intentional interference with economic relations, a plaintiff must prove the following six elements:

> (1) the existence of a professional or business relationship (which could include, *e.g.*, a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages.

*Mannex Corp. v. Bruns*, 250 Or. App. 50, 53, 279 P.3d 278, 281 (2012) (citing *McGanty v. Staudenraus*, 321 Or. 532, 535, 901 P.3d 841, 844 (1995)) (emphasis omitted).

Numrich has not cited, and the court has not located, any authority that establishes the existence of a "professional or business relationship" between a recipient of unemployment benefits and the public agency distributing those benefits. The relationship between Numrich and the Employment Department was not one of "the sort of voluntarily-created economic relationships or expectancies that the tort protects." *Travis v. City of Roseburg*, 2011 WL 2935561, at *6 (D. Or. July 15, 2011) (Aiken, CJ) (citations omitted). However, even assuming *arguendo* that Numrich could persuade the court that his relationship with the Employment Department was the type of "professional or business relationship" the tort was intended to protect, his claim fails for two reasons.

First, the Oregon Supreme Court has explained that deliberate interference, standing alone, is not enough to support liability for the tort of intentional interference with economic relations.

11 - ORDER

The "'interference resulting in injury to another [must be] wrongful by some measure beyond the fact of the interference itself'"; for instance, from the use of improper motives or improper means, or "'by reason of a statute or other regulation, or a recognized rule of common law, or perhaps an established standard of a trade or profession.'" *Evergreen Int'l Airlines, Inc. v. Anchorage Advisors, LLC*, 2012 WL 3637551, at *14 (D. Or. July 9, 2012) (Papak, MJ) (quoting *Top Service Body Shop, Inc. v. Allstate Ins. Co.*, 283 Or. 201, 209-10, 582 P.2d 1365, 1371 (1978)). Numrich has made no allegation that Ntekpere's testimony was accomplished through "improper means or for an improper purpose," as required by the fourth element of the tort.

Second, Numrich's statements to the Employment Department were absolutely privileged and, therefore, Numrich's claim based on those statements is barred. *See Martinez-Delacruz v. Stuart Olson Farms, Inc.*, 612 F. Supp. 2d 1151, 1154-55 (D. Or. 2007) (Aiken, J) (on "issue of first impression in Oregon [regarding] whether a private employer's statement to an administrative body, the [Oregon Employment Department], is entitled to privilege," finding employer's statements to Employment Department were "similar to the situation . . . where a private entity 'participates in the government process' by supplying necessary information to an administrative body," and, therefore, statements were "entitled to absolute privilege as a matter of law") (discussing cases).

Numrich further alleges, in this claim, that he was damaged by Ntekpere's "false advertisement of an employment position in a public medium," when Ntekpere knew or should have known the misleading ad would interfere with "gainful employment." Dkt. #22,

12 - ORDER

¶ 30. This allegation fails to state a claim for intentional interference with economic relations which requires, among other things, that the interference be accomplished by someone other than the parties to the relationship. The Oregon Supreme Court has explained that the tort "'serves as a means of protecting contracting parties against interference in their contracts from *outside* parties.'" *Mannex Corp.* 250 Or. App. at 53, 279 P.3d at 281 (quoting *McGanty*, 321 Or. at 536, 279 P.3d at 845; emphasis in original).

For these reasons, Numrich's claim for intentional interference with economic relations also is **dismissed** without leave to amend.

### D.    "*Specific Allegations*"

The next section of Numrich's Amended Complaint is entitled "Specific Allegations." In introductory paragraphs, he alleges Ntekpere made certain representations regarding "a specific employment position available to [Numrich]" during the 2011 tax season, and Ntekpere then "engaged in a classic 'bait-and-switch' in denying or otherwise ignoring any such position or verbal statement when [Numrich] arrived for training on February 1, 2011 as otherwise agreed." Dkt. #22, ¶¶ 33 & 34. He claims Ntekpere "thereby negligently misrepresented the employment position absent confirmation to [Numrich] at any time." *Id.*, ¶ 34. Numrich claims Ntekpere violated "generally accepted professional and licensing standards in the commercial preparation of income tax returns" by failing to offer him an employment agreement, "thereby negligently misrepresenting any intent to do so in a professionally-licensed

13 - ORDER

employment." *Id.*, ¶ 36. He also again complains that Ntekpere gave false testimony during the ALJ hearing regarding Numrich's unemployment compensation, claiming each of Ntekpere's false statements constituted "negligent misrepresentation, interference with [Numrich's] economic expectations, and inflicted emotional distress on [Numrich]." *Id.*, ¶¶ 38 & 39. Numrich further alleges Ntekpere has failed to offer to "settle any differences" between these parties, and Ntekpere's "wrongful conduct as against [Numrich] is not isolated and [is] likely to be repeated." *Id.*, ¶ 40.

Numrich then sets forth his "Claim" based on the above "specific" facts, including economic damages arising from the denial and "claw back" of unemployment benefits, and his time and expense in defending his claim with the Oregon Employment Department; and noneconomic damages including "pain and mental suffering, emotional distress, inconvenience, and interference with normal and usual activities. . . ." *Id.*, ¶¶ 42 & 43. He also claims to have suffered damage to his "personal welfare, reputation, and economic well-being." *Id.*, ¶ 44.

The facts as alleged by Numrich do not state a claim for any recognizable tort. In a nutshell, in all of his claims (both those labeled "general" and those labeled "specific"), Numrich seeks damages for Ntekpere's actions in two respects. First, he is aggrieved that he was not offered a position with Ntekpere's company that was consistent with Numrich's understanding of the newspaper advertisement for employment and/or with statements Ntekpere allegedly made during Numrich's interview. Second, he claims he was damaged by Ntekpere's testimony to the Employment Department indicating Numrich was "employed" by Ntekpere's company

14 - ORDER

and then quit his job. Even if every fact alleged by Numrich is accepted as true, the facts do not support liability under any theory Numrich has pled, or indeed any theory of which the court can conceive.

The court finds Numrich has failed to state any claim for which relief may be granted. The court further finds there is no amendment he could make to his pleading that would cure its deficiencies. Accordingly, Ntekpere's motion to dismiss is **granted**, and the entire case is **dismissed with prejudice.**

IT IS SO ORDERED.

Dated this <u>4th</u> day of February, 2013.

/s/ Dennis J. Hubel

_____
Dennis James Hubel
Unites States Magistrate Judge

15 - ORDER